# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL KOZAK, | : | Civil No. 3:14-cv-984 |
| | : | |
| Petitioner | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF PA, *et al.*, | : | |
| | : | |
| Respondents | : | |

## MEMORANDUM

Presently before the Court is a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254 (Doc. 10) filed by Petitioner Michael Kozak, who, at the time this petition was

filed, was incarcerated within the Pennsylvania Department of Corrections. Since the filing

of his petition, Kozak has been released from custody. He challenges his conviction in the

Court of Common Pleas of Luzerne County. (Doc. 10). The petition is fully briefed and ripe

for disposition. For the reasons that follow, the petition will be denied.

I. **Factual Background**

   A. **Criminal Conviction and Direct Appeal Proceedings**

   The circumstances surrounding Kozak's arrest and conviction were summarized as

follows in the trial court opinion that was issued following Kozak's direct appeal from his

judgment of sentence:

> On May 19, 2006 and May 25,2006, [Kozak] obtained and sold crack cocaine
> to a police confidential informant, Daniel Pinkowsky, at Pocono Trailer Court
> in Plains Township. [Kozak] did not deny that the transactions took place, but

rather, claimed that he was entrapped as discussed in more detail below. The first four counts of which he was found guilty are the drug counts for which the entrapment defense was raised. The fifth count, fleeing or attempting to flee an officer, occurred on May [25], 2006. On that date, a third transaction between [Kozak] and Pinkowsky was scheduled to take place. However, prior to the meeting, [Kozak] coincidentally happened to enter the parking lot at the Sheetz and Dairy Queen on Route 315, where Pinkowsky was meeting with Plains Township Police and drug enforcement agents from the Pennsylvania Attorney General's Office. Upon seeing Pinkowsky with the police, [Kozak] drove his vehicle out of the parking lot over a curb and down an embankment onto Route 315 where he proceeded north until he was apprehended. During the pursuit, [Kozak] was seen throwing yellow baggies out of the driver's side window. Two baggies were recovered and were determined to be crack cocaine.

See *Kozak v. Commonwealth of Pennsylvania, et al.*, No. 3:12-cv-1153 (M.D. Pa.) at Doc.

12-1, pp. 41-42, Trial Court's 1925(a) Opinion.

Kozak was charged with two counts of possession of a controlled substance,

possession with intent to deliver a controlled substance, two counts of delivery of a

controlled substance, and one count of fleeing or attempting to elude an officer.

(*Commonwealth v. Kozak*, 2014 WL 10795192 (Pa. Super. 2014)). On May 7, 2007, a jury

sitting in the Court of Common Pleas of Luzerne County convicted Kozak of two counts of

possession of a controlled substance, but deadlocked on the remaining counts. (*Id.*).

Kozak filed an appeal to the Pennsylvania Superior Court in which he argued that double

jeopardy principles prohibited him from being retried on the remaining charges, but the

Superior Court rejected his claims. (*Id.*). On October 15, 2008, a second jury convicted

Kozak of the remaining charges. (*Id.*). On December 11, 2008, Kozak was sentenced to a

2

term of incarceration of three (3) to seven (7) years. (*Id.*).

Kozak filed a direct appeal from his judgment of sentence with the Pennsylvania Superior Court in which he argued that the Commonwealth had engaged in entrapment and the verdict was against the weight of the evidence. (Doc. 21, pp. 147-160). On October 5, 2009, the Pennsylvania Superior Court rejected Kozak's claims and affirmed his judgment of sentence. (*Id.*; *see also* 137 MDA 2009[1]). Kozak then filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court, which was denied by Order dated September 8, 2010. (*See* 786 MAL 2009).

## B. PCRA Proceedings

On December 16, 2010, Kozak filed a petition under Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. ANN. § 9541 *et seq.* (*Commonwealth v. Kozak*, CP-40-CR-0003063-2006; CP-40-CR-0003064-2006; and CP-40-CR-0002559-2006).[2] The PCRA Petition raised claims of ineffective assistance of counsel, prosecutorial misconduct, and insufficiency of the evidence. On July 20, 2011, the PCRA Court dismissed the PCRA Petition, but then vacated its Order on August 5, 2011. (*Id.*). Even though the PCRA Court vacated its Order denying the PCRA Petition such that the PCRA Petition remained pending

---

[1]    *See* Pennsylvania Appellate Courts Docket Sheets, available through Pennsylvania's Uni'fied Judicial System Webportal, http://ujsportal.pacourts.us/docketsheets/appeilate.aspx

[2]    *See* Pennsylvania Common Pleas Courts Docket Sheets, *Commonwealth v. Kozak*, CP-40-CR-0003063-2006; CP-40-CR-0003064-2006; and CP-40-CR-0002559-2006, available through Pennsylvania's Unified Judicial System Webportal, http://ujsportal.pacourts.us/DocketSheets/CP.aspx

in that Court, on August 26, 2011, Kozak filed a Notice of Appeal from the July 20, 2011 Order denying the Petition to the Pennsylvania Superior Court. (1633 MDA 2011). On April 11, 2012, the Pennsylvania Superior Court quashed Kozak's appeal based upon the fact that the Order from which he appealed had been vacated, and there had been no subsequent trial court order disposing of Kozak's PCRA Petition, and thus there was no final order from which Kozak could appeal. (Id.; see also Commonwealth v. Kozak, 1633 MDA 2011, Pennsylvania Superior Opinion dated April 11, 2012).

On May 1, 2012, Kozak filed a Supplementary PCRA Petition. (Id.). On July 3, 2012, a Luzerne County Court of Common Pleas Judge appointed an attorney to represent Kozak in his PCRA proceedings. (Id.). On July 13, 2012, Kozak filed a Second Motion for Post-Conviction Relief. (Id.).

On May 17, 2013, a PCRA hearing was held and, on June 5, 2013, the PCRA Petition was denied. (Id.). On June 24, 2013, counsel for Kozak filed a Notice of Appeal to the Pennsylvania Superior Court. (Id.). On May 7, 2014, the Superior Court remanded the matter to the trial court for a determination of whether counsel had abandoned Kozak. (See 1357 MDA 2013).

On May 22, 2014, while the matter was pending before the Court of Common Pleas of Luzerne County, Kozak filed the instant federal habeas petition.

On June 6, 2014, the Luzerne County Court of Common Pleas Judge ordered

4

counsel to continue representation of Kozak, and the record was returned to the Superior

Court. (*Commonwealth v. Kozak*, CP-40-CR-0003063-2006).

On October 15, 2014, the Pennsylvania Superior Court affirmed the denial of the

PCRA Petition. (*Id.*). On November 14, 2014, Kozak filed a Petition for Allowance of

Appeal to the Pennsylvania Supreme Court. (*See* 837 MAL 2014). On May 4, 2015, the

Pennsylvania Supreme Court denied the Petition for Allowance of Appeal. (*Id.*).

## II. Discussion

### A. Mootness Doctrine

As a preliminary matter, the Court must address whether the instant petition has

been rendered moot by virtue of Kozak's release from custody. Article III of the Constitution

provides that the "judicial power shall extend to. . . cases. . . [and] to controversies." U.S.

Const. Art. III, § 2. This grant of authority embodies a fundamental limitation restricting the

federal courts to the adjudication of "actual, ongoing cases or controversies." *Khodara

Envtl., Inc. v. Beckman*, 237 F.3d 186, 193 (3d Cir. 2001). The mootness doctrine is

centrally concerned with the court's ability to grant effective relief. "If developments occur

during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of

a suit or prevent a court from being able to grant the requested relief, the case must be

dismissed as moot." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir.

1996). "Moreover, the requirement that an action involve a live case or controversy extends

5

through all phases of litigation, including appellate review." *County of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001) (citing *Khodara Envtl., Inc.*, 237 F.3d at 193; *Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990)). Once a petitioner has been released from custody, "some continuing injury, also referred to as a collateral consequence, must exist for the action to continue." *Burkey v. Marberry*, 556 F.3d 142, 147 (3d Cir. 2009). Consequently, in the absence of continuing collateral consequences, a federal district court does not have jurisdiction to review moot habeas claims. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("[m]ootness is a jurisdictional question"). It is the petitioner's burden to show that collateral consequences exist to avoid having the case dismissed as moot. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

The Supreme Court in *Spencer* held that release of a petitioner from custody on a parole violator term deprived federal courts of the power to act. Significantly, the Court found that there were no "collateral consequences" remaining after expiration of the parole violator term sufficient to animate the matter with a case or controversy capable of concrete redress, explaining that federal courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer*, 523 U.S. at 18. *See also United States v. Kissinger*, 309 F.3d 179, 181-82 (3d Cir. 2002) (a petitioner unconditionally released from probation cannot maintain challenge to sentence received for violating the terms of probation); *Lane v. Williams*, 455 U.S. 624, 632-34

6

(1982); *Hagwood v. Grondolsky*, 2009 WL 455499, at *2 (D.N.J. Feb. 19, 2009) (a federal inmate's challenge to the reversal of a decision to place him on home confinement became moot once he was placed on home confinement).

Since the filing of this action, Kozak has been released from custody on parole.[3] *See* Victim Information and Notification Everyday, available at https://www.vinelink.com/. The amended habeas petition does not contain a prayer for relief. However, in the initial petition, Kozak requested compensation and he requested that the Court vacate his sentence. (Doc. 1, p. 14). Thus, the Court assumes that Kozak seeks the same relief. The Court notes that Kozak may not receive monetary compensation in response to his claims. *See Preiser v. Rodriguez*, 411 U.S. 475, 495 (1973) ("In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy").

Furthermore, it appears that Kozak has been afforded the release sought in this action, i.e, his release on parole, and he has not shown that he is suffering any collateral consequences as required under *Spencer*, *Johnson*, and *Kissinger*. The type of habeas corpus claim asserted herein is mooted once an inmate is released from imprisonment. *See, e.g., Hagwood*, 2009 WL 455499. Since Kozak has been granted parole from state custody, his claim is subject to dismissal as moot since it no longer presents an existing

---

[3]    At the time the petition was filed, Kozak was incarcerated at the State Correctional Institution, Huntingdon, Pennsylvania. (Doc. 1). He has since been released and currently resides in Reading, Pennsylvania. (Doc. 22). Kozak has not communicated with the Court since March 2015. (*Id.*).

case or controversy. *See Leyva v. Williams*, 504 F.3d 357, 363 (3d Cir. 2007) (when a §

2254 petitioner is released from custody his habeas case is moot "unless he can

demonstrate he will suffer some collateral consequences if his conviction is allowed to

stand"). However, even if the petition were not rendered moot, Kozak's petition would still

be subject to denial on the merits.

## B.    Merits

Section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that

an application for a writ of habeas corpus premised on a claim previously adjudicated on the

merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the Supreme Court of the
> United States; or
> (2) [the decision] was based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not

sufficient for the petitioner to show merely that his interpretation of Supreme Court

precedent is more plausible than the state court's; rather, the petitioner must demonstrate

that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent*,

171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court

decision to be an unreasonable application of federal law if the decision, "evaluated

objectively and on the merits, resulted in an outcome that cannot reasonably be justified

8

under existing Supreme Court precedent." *Id.*

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301

F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[4]). Mere

disagreement with an inferential leap or credibility judgment of the state court is insufficient

to permit relief. *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362,

408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding

lacks evidentiary support in the state court record or is plainly controverted by evidence

therein should the federal habeas court overturn a state court's factual determination.

*Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-09.

### 1.    Entrapment

Kozak claims that he was entrapped into committing the offenses charged. (Doc. 1,

pp. 1-2). In the state courts, Kozak argued that the confidential informant ("CI"), as the

Commonwealth's agent, was aware of Kozak's addiction to drugs and used his awareness

of that weakness, as well as Kozak's sympathy for the CI's health problems, to entrap

Kozak into selling illegal dugs. The entrapment issue was addressed by the Pennsylvania

Superior Court on appeal from the Judgment of Sentence. (Doc. 21, pp. 147-160,

*Commonwealth v. Kozak*, 137 MDA 2009 (Pa. Super. 2009)). The Superior Court

specifically determined that:

---

[4]    "If the applicant challenges the sufficiency of the evidence adduced in such State court
proceeding to support the State court's determination of a factual issue made therein, the applicant, if able,
shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to
support such determination." 28 U.S.C. § 2254(f).

Based on the evidence of record, the trial court agreed with the jury's
conclusion rejecting Appellant's entrapment defense. The jury was instructed
on the elements of the offense charged as well as the affirmative defense of
entrapment. According to the trial court opinion, the jury twice sought
clarification on the entrapment defense. Trial Court Opinion, 3/25/08, at 2.
The jury listened to the testimony offered by the CI and Appellant, and
apparently found Appellant's explanation of the events leading to his
procurement of cocaine unconvincing as it related to his claim that he had
been entrapped by the CI or Commonwealth. The jury herein also found
incredible Appellant's testimony that he bought the crack cocaine for the CI
because he wanted to ease the pain of a man whom he admittedly disliked,
and whom he had had little or no contact with for several years.

. . .

Based on the record before it, the trial court logically found that the CI's
conduct was not so outrageous as to constitute entrapment and violate
Appellant's right to due process.

. . .

We agree that Appellant failed to prove, by a preponderance of the evidence,
that he was entrapped by the Commonwealth. The jury and the trial court did
not err by rejecting the entrapment defense. The trial court correctly found
that Appellant's due process rights were not violated.

(Doc. 21, pp. 156-57, *Commonwealth v. Kozak*, 137 MDA 2009 (Pa. Super. 2009))

The entrapment issue was further summarized by the Pennsylvania Superior Court

on appeal from the denial of Kozak's PCRA petition as follows:

[O]n two separate occasions, Appellant sold crack cocaine to Daniel
Pinkowsky, who was working as an informant for the Plains Township Police
Department. The third criminal complaint arose from an aborted drug sale
that transpired after the completed ones. Prior to the pertinent events,
Pinkowsky was engaged in criminal activities, and he discovered that he had
emphysema. After his disease progressed, Pinkowsky, of his own volition,
decided to start helping police. The activities that resulted in the three sets of
charges were conducted under the supervision of Chief of Police James

O'Malley.

On May 18, 2006, and May 25, 2006, Pinkowsky successfully purchased crack cocaine from Appellant. On May 26, 2006, Pinkowsky arranged to buy another quantity of crack cocaine from Appellant at a Dairy Queen parking lot. Chief O'Malley contacted agents from the Attorney General's office to meet him at the designated location. When Appellant arrived in his vehicle, he observed Pinkowsky speaking with the law enforcement officers, and Appellant sped away. In the process, Appellant ran over an embankment and nearly struck another vehicle. Appellant was pursued and eventually stopped by police. Crack cocaine was discovered on the floor of Appellant's vehicle.

Based upon these three incidents, Appellant was charged with two counts each of possession of a controlled substance, possession of a controlled substance with intent to deliver ("PWID"), and delivery of a controlled substance, and one count of fleeing or attempting to elude police. On May 7, 2007, a jury convicted Appellant of two counts of PWID, but deadlocked on the remaining charges. Appellant sought dismissal of the pending five charges on double jeopardy grounds. The court denied his request for relief, and we affirmed that denial. *Commonwealth v. Kozak*, 959 A.2d 967 (Pa. Super. 2008) (unpublished memorandum). On October 15, 2008, a second jury convicted Appellant of the five remaining crimes. At both trials, Appellant claimed that he was entrapped and that his decision to sell crack cocaine was solely the result of Pinkowsky's inducement and pleas that he needed that substance to alleviate his health problems. Both juries rejected that defense.

*Commonwealth v. Kozak*, 2014 WL 10795192, at *1 (Pa. Super. 2014).

In the instant habeas petition, Kozak does not argue that trial counsel failed to raise an entrapment defense. Indeed, trial counsel raised and argued an entrapment defense. During Kozak's trial, the jury was instructed on the elements of the offenses charged as well as the affirmative defense of entrapment. The jury in the state court found the entrapment defense meritless and the trial court ultimately agreed with the jury's conclusion rejecting

12

the entrapment defense. The issue of entrapment was a question for the jury, *United States v. Jannotti*, 673 F.2d 578, 597 (3d Cir. 1982) ("entrapment is generally a jury question") (citations omitted), and this Court is bound by the state court determination of state law. *Johnson v. Rosemeyer*, 117 F.3d 104, 115 (3d Cir. 1997) ("Only in extraordinary and compelling circumstances should a federal district court in a habeas corpus case decline to follow the opinions of a state intermediate court of appeal with respect to state law rendered in earlier proceedings involving the petitioner."). Consequently, this claim will be denied.

### 2. Double Jeopardy

Kozak next argues that his second trial should have been barred on Double Jeopardy grounds. (Doc. 10, pp. 2-3). The Pennsylvania Superior Court addressed Kozak's Double Jeopardy claim as follows:

> The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution commands that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Under this clause, once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense. *United States v. Dixon*, 509 U.S. 688, 696 (1993).
>
> The Pennsylvania Supreme Court has recognized that "the corresponding proscription contained in the Pennsylvania Constitution, Pa. Const. art. 1, § 10, 'involves the same meaning, purpose, and end [ ]'; thus, it has generally been construed as coextensive with its federal counterpart." *Commonwealth v. McGee*, 744 A.2d 754, 756 n.2 (Pa. 2000) (quoting *Commonwealth v. McCane*, 539 A.2d 340, 246 n.5 (Pa. 1988)). Pennsylvania employs a unitary analysis of the state and federal double jeopardy clauses "since the

13

protections afforded by each constitution are identical." *Commonwealth v. Schmidt*, 919 A.2d 241, 250 (Pa. Super. 2007) (citations omitted).

This Court has previously explained the protections of double jeopardy as follows.

> The protections afforded by double jeopardy are generally recognized to fall within three categories: (1) protection against a second prosecution for the same offense after an acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. The constitutional prohibition of double jeopardy also protects the convicted defendant from multiple prosecutions for the same offense, requiring a "single criminal episode" analysis.
> *Id.* (citations omitted).

Upon our review, it is clear that Kozak has failed to establish a violation of his constitutional protection against double jeopardy. On appeal, Kozak argues that he was forced to accept a mistrial concerning the remaining counts in this case, when the jury was unable to reach a verdict, because the trial court improperly refused to instruct the jury on entrapment in his first trial. Brief for Appellant at 13. According to Kozak, despite the fact that he asserted no defense, "the jury was so favorable [*sic*] disposed toward [ ] Kozak's conduct that it refused to convict him." Brief for Appellant at 13. Kozak's argument constitutes nothing more than a collateral attack on the trial court's determination in his previous trial that he was not entitled to a jury instruction concerning entrapment. Such an attack does not implicate the protections afforded by double jeopardy.

Moreover, this matter does not involve a situation where Kozak was placed in jeopardy for an offense and the jeopardy terminated. Despite Kozak's characterization of the outcome of his previous trial, the jury did not acquit him of the charges. Rather, the jury was unable to reach a verdict. Consequently, the jeopardy for the remaining offenses that Kozak faces has not terminated. For these reasons, we conclude that Kozak is not entitled to

relief on this claim.

(Doc. 21, pp. 83-85, *Commonwealth v. Kozak*, 1056 MDA 2007 (Pa. Super. July 29, 2008)).

In the habeas petition, Kozak states that he "feels that a second trial for the same offense should have been barred by th Double Jeopardy clause." (Doc. 10, p. 3). Kozak failed to develop this issue with any legal analysis and is clearly dissatisfied with the state court proceedings. Where, as here, a jury is unable to reach a verdict and does not acquit a defendant of the charges, jeopardy does not terminate, so that a retrial raises no double-jeopardy bar. "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green v. United States*, 355 U.S. 184 (1957). If a mistrial is properly declared it does not prevent reprosecution. *See Richardson v. United States*, 468 U.S. 317, 325 (1984) ("[W]e reaffirm the proposition that a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected."). Accordingly, Kozak's double jeopardy claim lacks merit and will be denied.

### 3. Inordinate Delay

Kozak asserts that he suffered inordinate delay related to the claims in his PCRA petition. (Doc. 10, pp. 3-4). Although inordinate delay may warrant relief from the burden of exhaustion, *see Story v. Kindt*, 26 F.3d 402, 405 (3d Cir. 1994), Kozak does not set forth

15

any argument pertaining to exhaustion. Kozak's PCRA proceedings have concluded, and his general dissatisfaction with any purported delay in state court is not a ground for relief in a § 2254 habeas corpus action. *Heiser v. Ryan*, 15 F.3d 299, 306 (3d Cir. 1994) (noting that there are no cases where a defendant has been released unconditionally on a writ because of a post-conviction delay; "[i]nstead, the habeas courts ordinarily have fashioned a remedy designed to spur the state courts to fulfilling their constitutional obligations to the defendant"). Accordingly, this claim will be denied.

### 4. *Ineffective Assistance of Trial Counsel*

The governing standard for ineffective assistance of counsel claims involves a two-prong test: (1) counsel's performance must have been deficient, and (2) this deficiency must have prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668 (1984).

#### a. Counsel's Performance

To obtain habeas corpus relief, Kozak must show that his counsel's performance was so inadequate that she "was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. *Strickland's* test is demanding as there is a "strong" presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, —— U.S. ——, ——,134 S.Ct. 10, 17 (2013). "To overcome the *Strickland* presumption that, under the circumstances, a challenged action might be considered sound

16

trial strategy, a habeas petitioner must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy." *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005). Even when the petitioner can point to evidence supporting a conclusion that in some respects counsel was deficient, the standard for prevailing under the first prong of *Strickland* remains stringent: a petitioner must establish that, "in light of all the circumstances," counsel's mistake was so egregious that it fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A court must assess "counsel's reasonableness . . . on the facts of the particular case, viewed as of the time of counsel's conduct." *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). Kozak has failed to overcome the presumption that counsel performed reasonably.

Kozak asserts that his trial counsel was ineffective for failing to locate a witness. (Doc. 10, pp. 5-6). He claims that he was with another unnamed and unidentified person, a black male, when he entered the Dairy Queen parking lot. Testimony presented at trial demonstrated that he was alone when he entered the Dairy Queen. Kozak also claims that this unidentified individual set up his neighbor in a similar situation, and this neighbor should have been called as a witness.[5]

---

[5] Regarding Kozak's claim that trial counsel was ineffective for failing present his neighbor as a witness at trial, Kozak failed to present this claim in state court. Thus, he has procedurally defaulted this claim. *Barnhart v. Kyler*, 318 F. Supp.2d 250 (M.D. Pa. 2004). The merits of this procedurally defaulted claim cannot be reviewed unless Kozak demonstrates either cause for the procedural default and actual

The issue of counsel's performance with respect to failure to present a witness was addressed by the Pennsylvania Superior Court on appeal from the denial of Kozak's PCRA petition. (*Commonwealth v. Kozak*, 2014 WL 10795192 (Pa. Super. 2014)). The Superior Court specifically determined that:

> Appellant faults counsel with failing to uncover the identity of a witness and presenting that witness at trial. The witness's testimony purportedly related to the May 26, 2006 incidents. At the PCRA hearing, Appellant claimed that he told his lawyer to try to locate an African-American male. Appellant said that he had purchased cocaine from this male before the date of his arrest, that this individual accompanied him when he went to the Dairy Queen parking lot on May 26th, that the unnamed man was in possession of the crack cocaine discovered in Appellant's vehicle, that Appellant refused to take the drugs from him, and that the male then threw the drugs in Appellant's car and left before police arrived. Appellant maintained to the PCRA court that this mystery man was working with police, that he saw him in the company of police after his arrest, and that presentation of this witness would have supported his entrapment defense. Despite the fact that Appellant had purportedly purchased drugs from this man prior to May 2006 and that Appellant supposedly was with him on May 26, 2006, Appellant was unable and remains unable to supply the name of this person or any information other than his race and gender.

> The test for establishing that trial counsel was ineffective in Pennsylvania is based upon *Strickland v. Washington*, 466 U.S. 668 (1984) and *Commonwealth v. Pierce*, 527 A.2d 973 (Pa.1987). *Commonwealth v. Spotz*, 84 A.3d 294, 303 n. 3 (Pa.2014). Specifically: "To establish trial counsel's ineffectiveness, a petitioner must demonstrate: (1) the underlying claim has

prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir. 1992). Kozak has not addressed the procedural default of this issue, and thus has not established sufficient cause, actual prejudice, or a fundamental miscarriage of justice. Consequently, Kozak is precluded from pursuing federal habeas corpus relief with regard to this claim.

arguable merit; (2) counsel had no reasonable basis for the course of action or inaction chosen; and (3) counsel's action or inaction prejudiced the petitioner." *Id.* Additionally, where a defendant raises an ineffectiveness claim based upon counsel's failure to investigate and call a potential witness, the defendant satisfies the performance and prejudice aspects of the *Strickland* test when he establishes:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Johnson*, 966 A.2d 523, 536 (Pa. 2009).

In the present case, Appellant does not even provide a name for this witness and, concomitantly, fails to prove that the witness existed and was willing to testify for him. Additionally, Appellant provided counsel with no viable means to ascertain the witness's identity. While Appellant vaguely mentions the availability of surveillance tapes of the Dairy Queen parking lot, we note that, according to Appellant, the following occurred. He was in his vehicle with this man when he arrived at Dairy Queen. However, Appellant abruptly left the parking lot immediately upon his arrival, and no one exited Appellant's vehicle at the Dairy Queen parking lot. Thus, it is highly unlikely that the face of this person, who was located inside a vehicle, would have been captured by a surveillance tape. Counsel cannot be faulted for failing to find an unnamed African-American male. It is also unlikely that this man would have admitted that he possessed the cocaine found on May 26, 2006. Hence, the PCRA court committed no abuse of discretion herein when it concluded that Appellant failed to prove his allegation of ineffectiveness.

*Commonwealth v. Kozak*, 2014 WL 10795192, at *2-3.

In evaluating whether counsel's performance was deficient, this Court "must defer to

counsel's tactical decisions, avoid "the distorting effects of hindsight" and give counsel the

benefit of a strong presumption of reasonableness. *Strickland,* 466 U.S. at 689. This Court

finds that the record relied upon by the Superior Court supports a finding that trial counsel

was not ineffective for failing to uncover the identity of a witness and present that witness at

trial. *United States v. Ciancaglini,* 945 F. Supp. 813, 823 (E.D. Pa. 1996) ("The decisions of

which witnesses to call to testify are strategic and therefore left to counsel."), *citing Diggs v.*

*Owens,* 833 F.2d 439, 445 (3d Cir. 1987).

                b.     Prejudice

Even if trial counsel's performance was deemed objectively unreasonable, Kozak

has failed to demonstrate prejudice.

The second *Strickland* prong requires the following:

> To show prejudice, *Strickland* requires a petitioner to show that "there is a
> reasonable probability that, but for counsel's unprofessional errors, the result
> of the proceeding would have been different." *Strickland,* 466 U.S. at 694,
> 104 S.Ct. 2052. This requires more than just a "conceivable" likelihood of a
> different result. *Harrington,* 131 S.Ct. at 792. However, a petitioner "need not
> show that counsel's deficient performance 'more likely than not altered the
> outcome of the case'—rather he must show only 'a probability sufficient to
> undermine confidence in the outcome.'" *Jacobs v. Horn,* 395 F.3d 92, 105
> (3d Cir. 2005) (quoting *Strickland,* 466 U.S. at 693-94, 104 S.Ct. 2052).
> Moreover, "[t]he effect of counsel's inadequate performance must be
> evaluated in light of the totality of the evidence at trial: 'a verdict or conclusion
> only weakly supported by the record is more likely to have been affected by
> errors than one with overwhelming record support.'" *Rolan v. Vaughn,* 445
> F.3d 671, 682 (3d Cir. 2006) (quoting *United States v. Gray,* 878 F.2d 702,
> 710-11 (3d Cir. 1989) (quoting *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052)).

*Grant v. Lockett*, 709 F.3d 224, 235 (3d Cir. 2013). This Court must therefore determine, in light of the totality of the evidence, whether there is a reasonable probability that counsel's failure to present witnesses sufficiently undermines confidence in the outcome of Kozak's trial. Consistent with *Strickland*, it was adequately demonstrated that trial counsel was not deficient in his representation of Kozak. He made no "errors so serious" so as to cease functioning as adequate counsel under *Strickland*. Thus, this Court finds that the clearly established federal law was reasonably applied in determining that trial counsel was effective in his assistance to Kozak. As the Superior Court noted, Kozak did not provide a name for the unidentified witness, and did not prove that the witness existed and was willing to testify for him. The Superior Court further noted that Kozak did not provide counsel with any means to identify the individual, and it was unlikely that the individual's image would have been captured by a surveillance tape, and that this individual would have admitted that he possessed the cocaine. Kozak cannot demonstrate prejudice as a result of counsel's action, that is, that the outcome of his case would have been different as a result of counsel's performance. Therefore, the ineffective assistance of counsel claim fails. *See Strickland*, 466 U.S. at 697 (holding that an ineffective assistance claim will be dismissed if the petitioner makes an insufficient showing under either the performance or prejudice prongs).

5.    *Perjured Testimony*

Kozak next asserts that the Commonwealth presented perjured testimony regarding the events that occurred in May 2006 in the Dairy Queen parking lot. (Doc. 10, pp. 6-7). Kozak failed to raise this claim before the state courts. His failure to timely present his claims at the state level constitutes an independent and adequate state ground sufficient to support a procedural default of his claims. *Barnhart v. Kyler*, 318 F. Supp.2d 250 (M.D. Pa. 2004). The merits of his procedurally defaulted claims cannot be reviewed unless he demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate "cause" for a procedural default, he must point to some objective external factor which impeded his efforts to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993). Kozak has not established sufficient cause for his default or demonstrated actual prejudice that would justify overlooking the default in this case. *Cristin v. Brennan*, 281 F.3d 404, 412 (3d Cir. 2002). Nor is there any indication that a failure to review his claim will result in a fundamental miscarriage of justice. Consequently, Kozak is precluded from pursuing federal habeas corpus relief with regard to

22

this issue.

### 6. Right to Due Process

Kozak claims his due process rights were violated based on the introduction of certain evidence at trial specifically, "two little yellow baggies," and because trial counsel did not file a suppression motion to bar the introduction of said evidence. (Doc. 10, pp. 7-8).

"[F]ederal habeas corpus relief does not lie for errors of state law," *Estelle v. McGuire*, 502 U.S. 62, 67 (1991), such as evidentiary rulings, unless the rulings rendered the trial so fundamentally unfair that a denial of constitutional rights results. *See also Bisaccia v. Attorney Gen. of New Jersey*, 623 F.2d 307, 312 (3d Cir. 1980), *cert. denied*, 449 U.S. 1042 (1980) ("evidentiary errors of state courts are not considered to be of constitutional proportion, cognizable in federal habeas corpus proceedings, unless the error deprives a defendant of fundamental fairness in his criminal trial"). The admission of evidence violates due process only if an evidentiary ruling is so egregious that it results in a denial of fundamental fairness. Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

In order to be granted habeas relief, Kozak must demonstrate that the introduction of the "baggies" denied him his right to a fair trial or denied him due process. Kozak has

simply failed to make this showing. Kozak acknowledges that " [t]he two little yellow baggies used at trial, there were no charges pertaining to that evidence." (Doc. 10, p. 8). He has failed to demonstrate that the admission of the "baggies" was unduly prejudicial such that it rendered the trial fundamentally unfair. Thus, this claim will be denied.

## III. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. Here, jurists of reason would not find the disposition of this case debatable. However, Kozak is advised that he has the right for thirty (30) days to appeal our order denying his petition, *see* 28 U.S.C. § 2253(a); FED. R. APP. P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he seeks, and obtains, a certificate of appealability from the court of appeals. *See* FED. R. APP. P. 22.

## IV. Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be denied. A

separate order shall issue.

Date:  September 21, 2017

Robert D. Mariani
United States District Judge